Gordòn J. Barnett v. Theodore M. Dollison, *et ux.*

169 So. 665.
Division ·B.
Opinion Filed September 9,·1936.

*George Palmer Garrett,* for Appellant;

*Fred R. Wilson,* for ·Appellees.

Buford, J.—The appeal brings for review order dismiss-ing amended bill of complaint on motion of defendant.

The amended bill in effect alleges that on December 1st, 1926, Gordon J. Barnett was the owner of certain land in Seminole County, Florida, described as lot 13, Block 3, Fern Park Estates, and on that date executed an agreement to convey the property to Theodore M. Dollison. Copy of the agreement is attached to the amended bill of complaint.

The bill also alleges that the agreement was filed for

record on October 11th, 1934, and that Dollison went into possession of the property about December 1st, 1926, pursuant to the agreement above referred to and that he has continued in possession thereof from that time until the date of the filing of the bill.

It alleges that on November 17th, 1927, a new agreement was executed between the parties with reference to purchase and sale of said property and that on June 28, 1931, Gordon J. Barnett, Inc., conveyed the property to Gordon J. Barnett.

It is alleged that Dollison has wholly defaulted in the performance of each of his contracts. It is then alleged that certain amounts are claimed to be due under the contract. It is alleged that Dollison accepted the agreement in the form of an option of November 17, 1927, in lieu of and for the original agreement of December 1, 1926. It is alleged that the option agreement has never been exercised by Dollison complying with the terms thereof and that Dollison has not acquired any interest in the property under the terms of the option.

The amended bill of complaint was filed on September 2, 1935.

Paragraph 22 of the bill is:

"Plaintiff proffers to do equity."

The bill does not tender a deed of conveyance to the defendant, nor offer to convey the property upon the payment of the balance claimed as purchase price.

The allegations of the amended bill of complaint are sufficient to show that the agreed price to be paid by the defendant to the plaintiff for the property was $5500.00; that on this price he paid one player piano valued at $650.00, which was accepted as part payment on that price, and agreed to pay $175.00 on January 1, 1927, $175.00 on Feb-

ruary 1st, 1927, $625.00 on March 1st, 1927, and $175.00 on the 1st day of April, May, June, July, August, September, October, November and December, 1927, and $100.00 on January 1, 1928, and the balance of $2200.00 to be paid in deferred payments evidenced by notes of the vendee drawing interest at 8% per annum payable annually.

While the agreement does not clearly so state, it is evident that the notes were to be in equal amounts and the agreement provides that they were to be paid two, three, four and five years. from date of the agreement and that such deferred payments should be secured by a purchase money mortgage on the lands agreed to be conveyed.

. On the 17th day of November, 1927, a new agreement was made which shows that $1100.00 had been paid on the purchase price which is recited as consideration for the option and in that agreement the vendor agreed to convey the property by good and sufficient warranty deed upon the payment by the vendee of certain sums of money thereinafter described within a certain time therein named. It was provided in this so-called option as follows:

"This option shall extend from the date of the signing of this option to December 17th, 1927, on which date this option may be extended by the further payment by the Optionee to the Optioner of One Hundred Eighty-Five Dollars ($185.00) in cash, until January 17th, 1928, on which date this option may be extended by the further payment by the Optionee to the Optioner of One Hundred Eighty-Five Dollars ($185.00) in cash, until February 17th, 1928, on which date this option may be extended by the further payment by the Optionee to the Optionor of One Hundred Eighty-Five Dollars ($185.00) in cash, until

March 17th, 1928, on which date this option shall immediately and automatically cease and determine.

"In the event of the exercise of this option on March 17th, 1928, the total purchase price of said property, including the amount paid for said option, shall be Five Thousand Five Hundred Dollars ($5,500.00) the remainder of Three Thousand Eight Hundred Forty-Five Dollars ($3,845.00) to be paid as follows: 'The sum of Two Hundred Forty-Five Dollars ($245.00) on or before March 17th, 1928; Five Hundred Fifty Dollars (550.00) on or before June 17, 1928; Five Hundred Fifty Dollars ($550.00) on or before Sept. 17, 1928; Five Hundred Fifty Dollars ($550.00) on or before Dec. 17, 1928; Four Hundred Eighty-seven and 50/100 Dollars ($487.50) on or before December 17, 1929; Four Hundred Eighty-seven 50/100 Dollars ($487.50) on or before December 17, 1930; Four Hundred Eighty-seven 50/100 ($487.50) Dollars on or before December 17, 1931; Four Hundred Eighty-seven 50/100 Dollars ($487.50) on or before December 17, 1932;' said deferred payments and the balance of the purchase price of said property, to be represented by notes of the Optionee, bearing interest at the rate of eight per cent. per annum from the date of this agreement, all of said notes to be secured by a purchase money Mortgage, covering said described land; and all of said notes and said Mortgage, properly executed, to be delivered to the Optioner simultaneously with the delivery to the Optionee of a good and sufficient warranty deed conveying said land, on said seventeenth day of March, 1928, and upon the payment by the Optionee to the Optioner on said date of said additional sum of Two Hundred Forty-five Dollars."

So, when the allegations of the amended bill of complaint together with the exhibits, the two agreements thereto at-

tached, are taken together, it appears that "A" agreed to sell "B" and "B" agreed to buy from "A" certain parcels of land at a stated price. That "B" paid a part of the purchase price and went into possession of the property under the contract to purchase. "B" defaulted in payments as per agreement and, without cancellation of that agreement, except by implication, it was agreed between A and B that the terms of the purchase would be changed to the form of an option and the dates of deferred payments would be changed, so the total amount of the purchase price would remain the same. That B continued in possession under the contracts and defaulted in making the payments contemplated by the option contract or second agreement, and thereafter filed for record in the office of the Clerk of the Circuit Court the original bargain and sales contract. By this act B put A and the world on notice that he would claim such rights as were vested in him under the original contract. Then A filed this suit to foreclose whatever rights B might have by reason of his payments under the terms of the contracts and by reason of the rights acquired by him under the terms of those contracts.

The amended bill of complaint could have been couched in more apt language than is used. There are allegations of conclusions of law which should be eliminated but we do not find in the amended bill of complaint either contradictory allegations or inconsistent positions. The bill may be said to present a double aspect and it prays for different kinds of relief but what the bill prays for is immaterial.

In McCarthy's Florida Chancery Act, Annotated, 2nd Ed., page 74, the author says:

"Bill with double aspect. If the plaintiff is in doubt as to the exact state of facts upon which his equity is

founded, he may frame the bill with a double aspect; but framing a bill with a double aspect does not mean that it may allege two sets of facts which are inconsistent with each other and would not warrant the same relief. Under a good bill framed wtih a double aspect the plaintiff would be entitled to the same relief under either aspect of his bill. See Story Eq. Pl. 10th Ed. Sec. 254, p. 243. An example of a bill with a double aspect would be one seeking to cancel a deed, one aspect alleging fraud and undue influence, and the other aspect alleging insanity of the grantor or weakness of mind. See Story Eq. Pl., 10th Ed. Sec. 254, p. 243. If one of the two so-called aspects would entitle the plaintiff to relief of one kind and the other so-called aspect would entitle him to different relief, the bill would state two different causes of action and would not be a bill with a double aspect properly so-called. Shields vs. Barrow, 17 How. (U. S.) 130, 15 L. Ed. 158; Cutter v. Iowa Water Co. (C. C. Ia.) 96 Fed. 777; Merriman v. C. & E. I. R. Co. (C. C. A. 7) 64 Fed. 535, compare Howard v. Goodspeed, 101 Fla. 699, 135 So. 294, for example of the difficulty sometimes of distinguishing between two theories of the same cause of action and two different states of fact. Where a bill alleges more than one ground for rescission or cancellation of a contract it need not show upon which ground the plaintiff intends to rely."

Sec. 31 of the Chancery Practice Act also provides that plaintiff may join in one bill as many causes in action cognizable in equity as he may have against the defendant.

In this case the allegations were sufficient to show that the defendant is in possession of the property, the legal title to which is in the complainant; that he acquired that possession under a contract for the purchase of the prop-

erty and he has not complied with the terms of his contract to purchase.

The amended bill of complaint alleges sufficient facts to give equity jurisdiction to adjudicate the rights of the parties under the agreements pleaded. That a vendor's equitable remedy for enforcement of payment for property is suit in nature of a strict foreclosure was definitely determined in Schmidt *et ux.* v. Kibben, 100 Fla. 1684, 132 Sou. 194; Miami Bond & Mortgage Co. v. Bell, *et ux.,* 101 Fla. 1291, 133 Sou. 547; Wordinger v. Wirt, 112 Fla. 822, 151 Sou. 47.

In Smalley v. Sovereign Finance Co., 102 Fla. 32, 135 Sou. 558, we held:

"Tender of a deed by a vendor before suit for foreclosuse of a vendor's lien is not a condition precedent to a suit in equity against the vendee in possession."

In the same case we also held:

"Where a suit is brought for foreclosure of a vendor's lien against the vendee in possession and the sales contract forming the basis of the suit is made a part of the bill of complaint, an allegation is sufficient to the effect that complainant had performed all the covenants and provisions of said sales contract on its part to be kept and performed and that it stood ready, willing and able to convey the land involved by a good and sufficient warranty deed to the defendant vendee upon compliance by the latter with the terms and provisions of the sale contract and promissory notes given in connection therewith, where the bill further alleges that the vendees had been let into possession of the lands under the sales contract and were still in possession of the lands under such contract, without having made the payments covenanted to be made by them."

Appellee relies with confidence on the case of Norris v.

Eikenberry, 103 Fla. 104, 137 Sou. 128. Because of different factual conditions, we think this case is not ruled by the opinion and judgment in that case. Under the 1931 Chancery Practice Act, motion to dismiss takes the place of demurrer formerly used. The motion to dismiss in this case contains 16 grounds.

As heretofore pointed out, the bill of complaint, while not entirely without equity, did not contain essential allegations to entitle the complainant to a decree of foreclosure because the allegations did not meet the rule stated in Smalley v. Sovereign Finance Co., *supra*.

In Gross v. Hammond, opinion filed March 25, 1936, reported 157 Sou. 373, we dealt with an option contract but we did not construe it merely as an option to buy property. We construed it as an extension of a mortgage, and said:

"The whole transaction amounted to no more than if the title holder, Gross, had conveyed the property to the mortgagee with a concurrent agreement that upon the payment of the amount of the mortgage debt, the grantee in that deed would reconvey the property to the grantor. In Holmberg v. Hardee, 90 Fla. 787, 813, 108 So. 211, 221, we said: "Where there is a purpose or an intent to secure the payment of money, any instrument conveying or selling property is in law a mortgage wtihout reference to the terms of the instrument.'"

So in this case the option agreement appears to have been no more or less than an extension of the original purchase and sale agreement.

The original purchase and sale agreement, having been recorded by the defendant, became and is a cloud on the complainant's title and while, as heretofore pointed out, the amended bill is not sufficient as a basis for foreclosure, it is sufficient in its allegations to give the court jurisdiction

to decree a forfeiture and cancellation of the original agreement and of the option agreement upon such terms and conditions as might be required in equity and good conscience applying thereto the legal principles enunciated in the case of Taylor v. Rollins, 86 Fla. 279, 97 Sou. 714, 90 Fla. 621, 106 Sou. 424.

The order from which appeal is taken was:

"The foregoing cause coming on this day to be heard after notice upon the motion of the defendants to dismiss the amended bill of complaint herein, and the court having heard argument of counsel and being fully advised in the premises: DOTH ORDER, ADJUDGE AND DECREE that said motion be and the same is hereby sustained, to which ruling the plaintiff excepts, and the plaintiff not having asked leave to amend said bill of complaint, this cause is hereby dismissed at the cost of the plaintiff, to which ruling the plaintiff excepts."

This Order indicates that the complainant would have been allowed to amend his bill of complaint, had he desired to do so, but he failed to avail himself of that privilege, and, thereupon, the bill of complaint should have been considered as one seeking a decree for rescission and cancellation with consideration of the foreclosure feature eliminated. The accounting prayed for is incident to rescission and cancellation.

For the reasons stated, the decree should be reversed with directions that an Order be entered in conformity with the views herein expressed, but without prejudice to the complainant to further amend his amended bill of complaint, should he wish to do so.

So ordered.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., concurs in the opinion and judgment.

BROWN and DAVIS, J. J., dissent in part.

BROWN, J. (dissenting in part).—See Realty Securities Co v. Johnson, 93 Fla. 46, 111 So. 46; Chubb v. Chadwick, 93 Fla. 114, 111 So. 538; Norris v. Eikenberry, 103 Fla. 104, 137 So. 128. The first contract was cancelled by the second or option contract. Default in the latter contract— failure to exercise its option—left the legal title unincumbered in the vendor. The only equity the vendor has is to have the first contract cancelled of record. He can get possession by ejectment. There is nothing to foreclose. See also Wilson v. Daniel, 94 Fla. 1140, 115 So. 527. Skipper v. Handley, 99 Fla. 382, 126 So. 386; Pierce v. Stevenson, 109 Fla. 517, 147 So. 842.

DAVIS, J., concurs.