# JOHN W. HEDENBERG
## *v.*
# KILER K. JONES.

1. SPECIFIC PERFORMANCE — *not decreed where there is great laches.* Where a party is guilty of great *laches* in the performance, or offer to perform, his part of a contract, without any excuse therefor, he is not in a position to invoke the aid of a court of equity to compel a specific performance by the other party.

2. Where the vendor of land, by a contract, under which the payment of the purchase money and the delivery of the deed were to be concurrent,

tendered a deed to the vendee, at the proper time, and demanded payment, which was refused, and no offer of payment was ever made until four years afterwards, it was *held*, that there was such *laches* as to prevent a court of equity from decreeing a specific performance of the contract in favor of the vendee or his assignee.

3. SAME—*in favor of assignees.* The vendor in a contract for the sale of land is not required to hunt up the assignees of his vendee to tender a deed. It is sufficient if he tenders it to the vendee; and if the contract is assigned, it is the duty of the assignees to make demand of the vendor for a conveyance within a reasonable time, and if they fail to do so, they will not be entitled to the aid of a court of equity to enforce a specific performance.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Mr. MORTON CULVER, and Mr. WM. H. KING, for the appellant.

Messrs. BONFIELD, SWEZEY & SMITH, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is an appeal from a decree of the circuit court of Cook county, dismissing a bill filed therein, by John W. Hedenberg, against Kiler K. Jones, to enforce the specific performance of a contract for the conveyance of a certain tract of land, of which complainant alleged he was assignee.

It appears the contract to sell and convey was made on the 26th of February, 1869, by defendant, Jones, with H. A. Jackson and W. H. Williams, and by them assigned, some time in the spring following, to True Woodbury, and on the 14th of May, 1869, Woodbury assigned the same to Charles H. Adams.

Complainant claimed through an assignment made to him by Adams, on April 12, 1873. The bill was filed May 23, 1873. It was agreed the original contract and the record thereof were destroyed by the fire of October 9, 1871. The contract was admitted to be, in substance, truly stated in complainant's bill.

An answer was put in by defendant, denying some of the material allegations of the bill, and setting up in bar of the

relief sought an abandonment of the contract, and a forfeiture thereof by default in payments, and inexcusable *laches*. A replication was filed, and the cause heard on bill, answer, replication and proofs, which resulted in a decree denying the relief sought and dismissing the bill at complainant's costs.

The main question is, was there such *laches* as to justify the decree. Of this, we have no doubt. The contract was made in February, 1869, the purchasers then being unable to perform the contract. It was evidently a chancing bargain, to be performed if money could be made out of it; if not, to abandon it. No effort was made by the first purchasers, or by any of the assignees, to perform the contract, and it is clearly shown no one of them was able to perform the contract. Paying twelve thousand dollars and delivery of the deed were concurrent acts, and when a deed was tendered to the original contracting parties, there was a refusal to comply. It would appear it was not expected by these assignees that they would perform the contract, for they had not the ability. After the tender of the deed, and refusal to pay the instalment due, the defendant had a right to consider the contract as abandoned, and all parties seem, in the future, to have so understood it. After the expenditure of money by defendant on the property, selling portions of it to others, during the four years intervening the tender of a deed and the refusal to pay, and a large advance in value, complainant takes an assignment of the contract for one dollar paid, and, as it would seem, for the very purpose of a suit.

It was not the duty of the vendor to hunt up the various assignees of the contract; it was their duty to make a tender of the money and demand a deed. The whole affair was a speculation by parties who had no means of paying the price, and who did not expect to fulfill the contract, but to sell out at an advance, if possible.

This is not a case for specific performance. In the exercise of a sound legal discretion, a court of equity could not so decree. No eagerness or willingness to perform had been manifested, until some public improvements in the neighborhood of this

land had inflated its value quite three hundred per cent. Adams, the last assignee, through whom complainant claims, slumbered more than four years, and then, in 1873, for a nominal consideration, assigned the contract to complainant. During this time, the position of the vendor, Jones, had greatly changed, by reason of expenditures upon the property and by sales of portions of it, all which he was justified in doing, by reason of the non-compliance by the vendee with the terms of the contract, and by the successive assignees, they all and each having had abundant opportunity to comply.

This court has never favored bills for specific performance under such circumstances as are developed in this record, and without even the appearance of an excuse for the delay. It would be inequitable and unjust so to decree. The continued *laches* of these parties is equivalent to an abandonment of the contract, and it will be so regarded. *Hough* v. *Coughlan*, 41 Ill. 130, and numerous other cases to the same effect decided by this court.

There is not the semblance of equity in this bill. Complainant's assignors have always been in default, and no one ever had an intention to perform the contract until the value of the land had so largely increased.

The decree of the court below dismissing the bill was right, and it must be affirmed.

*Decree affirmed.*