301 So.2d 820 (1974)
Hugh SAWYER, As Guardian Ad Litem and Administrator Ad Litem, Appellant,
v.
MARCO ISLAND DEVELOPMENT CORPORATION, a Florida Corporation, Appellee.
No. 73-199.
District Court of Appeal of Florida, Second District.
October 23, 1974.
Hugh Sawyer, Naples, for appellant.
Williams, Salomon, Kanner & Damian, Miami, for appellee.
GRIMES, Judge.
We had originally intended to affirm this case without opinion referring only to the case of Pierce & Stevenson v. Jones, 1933, 109 Fla. 517, 147 So. 842, as authority for the decision. In view of the dissenting opinion, we believe it would be helpful to add some additional comments.
Marco Island Development Corporation brought this suit to quiet the title to thirty-six lots within its subdivision. Defaults were taken against the majority of the lot-owners. Thereafter, Mr. Sawyer was appointed guardian ad litem to represent such of these defendants who may have been incompetent or deceased and attorney pursuant to the Soldiers' and Sailors' Civil Relief Act. As such, he contacted many of these defendants and was able to determine that none of them were deceased, incompetent or in the military service. At that point, he had no further responsibility to those persons.
However, Mr. Sawyer was unable to locate the owners of approximately half the lots, and on behalf of these persons he filed general denials as well as a number of affirmative defenses. When Marco Island's motion for summary judgment came on for hearing, the material allegations of the complaint were supported by affidavit which stated that no payments had been made on any of the contracts for more than a year. There were no countervailing affidavits or depositions in support of the denials or affirmative defenses. Hence, the only viable issue which remained was whether Marco Island had a right to quiet the title while also retaining the payments previously made on the lots, and this was only because the facts which posed this issue were apparent from the face of the complaint and the affidavit.
The dissenting opinion correctly states that the various decisions of the Florida courts on this point are not easily harmonized. However, the closest case in point is Pierce & Stevenson v. Jones, supra, in which the Taylor case quoted by Judge *821 Mann is distinguished. We see a substantial difference between the unjust enrichment which would result if a large deposit were forfeited within a short period of time and a situation where a vendor has removed his property from the market for several years while the vendee abandons the contract by ceasing to make further payments for which he wasn't liable in the first place. Cf. C.O. Condominiums, Inc. v. Dickinson, Fla.App.2d, 1974, 301 So.2d 106. Moreover, none of the persons represented by the guardian ad litem in this case had made payments in excess of 25% of the purchase price and most of them had paid much less.[1]
In short, it may be that the Supreme Court should readdress itself to the question, but this is not the case in which it should be accomplished.
McNULTY, C.J., concurs.
MANN (Ret.), J., concurs in part, dissents in part with opinion.
MANN (Ret.), Judge (concurring in part, dissenting in part).
This is an action in which Marco Island Development Corporation seeks to quiet the title to certain lots sold on installments to buyers who subsequently defaulted. My quarrel with the majority lies in their treatment of Pierce & Stevenson v. Jones, supra, as a precedent unqualified by equitable considerations. There are a great many transactions involved. I would concur with the majority in quieting the title to Lot 2, Block 138, Unit No. 5, which was purchased by William J. Haley and Mary G. Haley for $5,450 of which they have paid $227.70, but I strenuously dissent from the quieting of title to Lot 9, Block 209 Unit No. 7, which was sold to Jerome Poschel for $7,776 of which he has paid $6,941.
Each of the agreements contains the following:
"I understand that Mackle Bros. will grant me a `grace period' of 60 days, without penalty, if I am unable to make any payment (after the first payment) exactly on the date due. I understand that although I am under no personal liability to make any payments on this contract, since Mackle Bros. has taken this property off the real estate market and will be turning away other prospective purchasers as well as incurring development and other expenses in connection with its sale, all prior payments made by me will be retained by Mackle Bros. as agreed upon and liquidated damages in the event that I fail to make any payment on the purchase of this property within 60 days of the due date, and neither party will have any further claim against the other."
In this case a diligent guardian ad litem and administrator ad litem for purchasers scattered from Sweden to Hong Kong has raised issues which I think were prematurely determined on summary judgment. In short, the trial judge treated the vendor's right to quiet title as absolute and ignored equitable considerations which are plainly mentioned by the Supreme Court of Florida in several cases as militating against summary judgment as to all parcels in this case. The question having been raised whether it is unjust for the vendor to retain very substantial payments in addition to the unencumbered title to this property, the trial judge should in my judgment have proceeded to consider the equities of each vendee's situation. Our Supreme Court has never adhered to any precise formula. In Taylor v. Rawlins, 1923, 86 Fla. 279, 97 So. 714, our Supreme Court said that the vendor
"has asked the aid of a court of equity and having come into equity he must abide by the rules governing equitable *822 relief, one of which is, that `he who seeks equity must do equity.' He asks the court to relieve him from his contract and the consequences of its recordation. He desires, however, to retain all that he acquired by virtue of it, while being relieved of its inconveniences and detriments. He seeks equity, but does not offer to do equity."
A decree quieting title without requiring restitution was reversed. In Realty Securities Corp. v. Johnson, 1927, 93 Fla. 46, 111 So. 532, the complainant seeking to quiet title had conveyed one of two lots contracted for, upon receipt of $190, and sought to quiet title to a second lot was held to have stated sufficient grounds for complaint. An order of dismissal was reversed. But, in that case the balance due on a contract was $285 so that the "defendant received from complainant property of more value than the sum which had been paid to the complainant." In Beatty v. Flannery, Fla. 1950, 49 So.2d 81, a ten percent deposit was held forfeited for unjustified failure to complete the vendee's performance, but this was a law action in which restitution of the earnest money was sought. The decision seems entirely correct and the opinion recognizes
"that there are exceptions to the general rule that a vendee in default cannot recover, but we find no such circumstances in this case. There is no intimation of fraud on the part of the vendor, nor that the vendee's failure to fulfill the contract was due to any misfortune beyond his control that gave the vendor a benefit, the retention of which was shocking to the conscience of the court. Nor is it here contended that there was a mutual rescission of the contract."
The court distinguished Pembroke v. Caudill, 1948, 160 Fla. 948, 37 So.2d 538. There recovery of an earnest money deposit of $6,200 on a contract for sale in the amount of $67,500 was determined by the trial court to be a penalty as a matter of law but one of the considerations obviously was that only a single day's default was stated in the contract to trigger a forfeiture. The same trial judge was affirmed in both Beatty and Pembroke. The forfeiture in Beatty seems reasonable because the amount forfeited was the initial payment. It did not exceed ten percent of the purchase price, and the contract was in all other respects reasonable.
I cannot harmonize the precedents of our Supreme Court with any automatic forfeiture of such large percentages of the purchase price as are involved in this case. The question is one of considerable significance and is the subject of a voluminous literature. See Annotation, 31 A.L.R.2d 8; Lee, The Plaintiff in Default, 1966, 19 Vand.L.Rev. 1023, 1041-1049; Lee, Defaulting Purchaser's Right to Restitution Under the Installment Land Contract, 1965, 20 Miami L.Rev. 1; Corbin, The Right of a Defaulting Vendee to the Restitution of Installments Paid, 1931, 40 Yale L.J. 1013; Ballentine, Forfeiture for Breach of Contract, 5 Minn.L.Rev. 329; 5A Corbin, Contracts, §§ 1129-33.
I do not disagree with my brethren that this action should be affirmed as to those who made small initial payments and soon ceased to pay. That is the principle of Pierce & Stevenson v. Jones, supra. As to those buyers who paid conscientiously until substantial portions of the purchase price were paid I think equity imposes upon the plaintiff a duty to do equity or offer to do equity which the defendant's default does not cure. For example, foreclosure of these substantial interests may result in the return to these buyers of at least a portion of their investment. I think it inevitable as the case presently stands that the plaintiff will be unjustly enriched. I do not know where the line should be drawn, but I believe that the payment of a substantial amount of the purchase price imposes upon the seller an obligation to foreclose rather than simply quiet the title as if the buyer's rights were forfeited. I would hope that our Supreme Court would find *823 the present decision in conflict with the cases cited herein and adopt a rule for the future which is fair to seller and buyer alike.
I respectfully dissent.
NOTES
[1] Jerome Poschel, who is mentioned in the dissent, was located by the guardian and determined to be alive, competent and not serving in the military service.